UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MELISSA S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-cv-00118-RLY-DML |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations, Social Security | ) | |
| Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Melissa S. ("Plaintiff") applied for disability insurance benefits ("DIB") and/or supplemental security income ("SSI") from the Social Security Administration ("SSA") on November 19, 2013, alleging an onset date of June 6, 2012. [Filing No. 13-2 at 14.] Her application was initially denied on March 20, 2014, [Filing No. 13-4 at 2], and

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] It has come to the court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Apr. 27, 2018). The caption has been updated to reflect Ms. Berryhill's current official title.

upon reconsideration on July 15, 2014, [Filing No. 13-4 at 12]. An Administrative Law Judge (the "ALJ") held a hearing on May 2, 2016. [Filing No. 13-2 at 37-75.] The ALJ issued a decision on June 3, 2016, concluding that Plaintiff was not entitled to receive DIB or SSI. [Filing No. 13-2 at 11.] The Appeals Council denied review on May 4, 2017. [Filing No. 13-2 at 2.] On July 3, 2017, Plaintiff timely filed this civil action, asking the court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility

of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Deputy Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[3] "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*,

---

[3] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, the citations in this opinion refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Deputy Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Plaintiff was 45 years of age at the time she applied for DIB and/or SSI. [Filing No. 13-6 at 2.] She has completed at least a high school education and previously worked as a production assembler, an administrative secretary, and as a production supervisor. [Filing No. 13-2 at 25.][4]

---

[4] Both parties provided a description of the relevant facts in their briefs. [Filing No. 17; Filing No. 20.] Because that discussion often implicates sensitive and otherwise confidential medical information concerning Plaintiff, the court will simply incorporate those facts by reference and detail specific facts only as necessary to address the parties' arguments.

4

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Plaintiff was not disabled. [Filing No. 13-2 at 26.] The ALJ found as follows:

- At Step One, Plaintiff had not engaged in substantial gainful activity[5] since June 6, 2012, the alleged onset date. [Filing No. 13-2 at 16.]

- At Step Two, Plaintiff had the following severe impairments: obesity, spinal stenosis, rheumatoid arthritis, osteoarthritis, headaches, mild right shoulder arthritis, high blood pressure, obstructive sleep apnea, fibromyalgia, and "the following labeled mental disorders: affective, anxiety, and attention deficit hyperactivity." [Filing No. 13-2 at 16.]

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 21.]

- After Step Three but before Step Four, Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl; she can have occasional exposure to hazards (heights, moving machinery); she can perform simple, routine, repetitive work involving only occasional interaction with the public." [Filing No. 13-2 at 22.]

- At Step Four, relying on the testimony of the vocational expert ("VE") considering Plaintiff's age, education, work experience, and RFC, that Plaintiff is capable of performing her past relevant work as a production assembler. [Filing No. 13-2 at 24-25.]

- Though the ALJ found that Plaintiff could perform her past relevant work, the ALJ proceeded to Step Five to determine, in the alternative, whether Plaintiff could perform other jobs that existed in substantial numbers in the national economy. Again relying on VE testimony considering the factors above, the ALJ found through the date of the decision that Plaintiff could have worked as a

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

housekeeper/cleaner, an office helper, and as an inspector/hand packager. [Filing No. 13-2 at 25-26.]

## III.
### DISCUSSION

Plaintiff makes two assertions of error regarding the ALJ's decision, each of which the court will consider in turn.

**A. Fibromyalgia**

Plaintiff argues that despite the ALJ finding that the evidence established fibromyalgia as a severe impairment, "the ALJ's decision reveals no attempt to evaluate the fibromyalgia to determine the 'intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work.'" [Filing No. 17 at 2 (quoting Social Security Ruling ("SSR") 12-2p (S.S.A.), 2012 WL 3104869, (July 25, 2012).] Plaintiff further adds that the "ALJ's attempt to evaluate all of [Plaintiff's] symptomology refers essentially to objective medical tests" and "[i]t is well established that other than subjective tender points, there is no objective bright-line test to establish fibromyalgia and it's symptoms may 'wax and wane.'" [Filing No. 17 at 2 (citing SSR 12-2p).]

The court does not find any error of law based on an alleged failure of the ALJ to follow SSR 12-2p. "Social Security Rulings are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). "This ruling provides guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12-

2p. The first part of the ruling is not at issue, as the ALJ determined that fibromyalgia was a severe medically determinable impairment ("MDI"). [Filing No. 13-2 at 16.] "Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p. The Ruling goes on to state that:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.

*Id.*

The court notes at the outset that both Plaintiff and SSR 12-2p cite to SSR 96-7p for guidance as to how subjective statements are to be considered by an ALJ. [Filing No. 17 at 2.] On March 28, 2016, SSR 16-3p became effective and issued new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. SSR 16-3p (S.S.A.), 2016 WL 1119029 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id.* SSR 16-3p rescinded and superseded SSR 96-7p. SSR 16-3P (S.S.A.), 2017 WL 5180304, (Oct. 25, 2017) ("This SSR, republished in its entirety, includes a revision to clarify that our adjudicators will apply SSR 16-3p when we make determinations and decisions on or after March 28, 2016."). Based on the date of the

7

determination, the ALJ correctly cited the applicable language of SSR 16-3p in evaluation of Plaintiff's subjective complaints. [Filing No. 13-2 at 23.]

Contrary to Plaintiff's assertion that "a complete review of the ALJ's decision reveals no attempt" to evaluate the subjective symptoms related to her fibromyalgia, [Filing No. 17 at 2], the ALJ detailed Plaintiff's complaints, including widespread and persistent pain, shortness of breath, fatigue, mood disruption, panic, and periods of confusion, [Filing No. 13-2 at 23]. While the ALJ does focus much of the subsequent discussion on the results of objective testing that would be more relevant to Plaintiff's other impairments, [Filing No. 13-2 at 23], the ALJ does go on to evaluate some of the other evidence listed as relevant under SSR 12-2p, including her daily activities and the statements of others, [Filing No. 13-2 at 24]. In particular, the ALJ gave significant weight to Dr. Brill, [Filing No. 13-2 at 24], an expert analyst who reviewed the record, including at least some of the evidence related to Plaintiff's fibromyalgia, and assessed an RFC for a reduced range of light work similar to the ALJ's ultimate RFC finding, [Filing No. 13-3 at 26-27]. Plaintiff does not provide any argument challenging Dr. Brill's opinion or the ALJ's finding that the opinion was deserving of significant weight.

The ALJ also made efforts in previous portions of the decision to evaluate the subjective complaints in light of the evidence of record. The ALJ is not required to address every piece of evidence in each section of his decision nor repeat the factual analysis throughout each section. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses"). "There is no

requirement of such tidy packaging, however; we read the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (citing *Rice*, 384 F.3d at 369; *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). For example, the ALJ noted that Plaintiff "rated her pain level as a nine, during a February 13, 2014, examination. Despite this assertion, clinicians remarked that claimant appeared comfortable, and was able to move about and make transfers without difficulty." [Filing No. 13-2 at 19 (citing Filing No. 13-21 at 3 (Dr. Thornberry, who provided Plaintiff's rheumatology treatment, noted the contrast between the pain complaints and her appearance on examination)).] The ALJ also noted that Plaintiff "seemed somewhat depressed during a November 2015 follow up. She did indicated [sic] that the stimulant agent, Adderall had helped with her energy level, and that she was able to perform her household daily activities." [Filing No. 13-2 at 20 (citing Filing No. 13-24 at 10).] In light of that discussion, the court cannot conclude that the ALJ made no attempt to comply with SSR 12-2p or to assess Plaintiff's subjective complaints.

Plaintiff does not provide any additional argument beyond the conclusory assertion, rejected by the court, that the ALJ made no attempt to evaluate her subjective complaints related to her fibromyalgia. For example, Plaintiff does not cite to any evidence of record that was ignored by the ALJ, much less improperly weighed as to its significance. Moreover, despite Plaintiff's contentions that her fibromyalgia was not properly assessed, she fails to articulate how she was functionally impacted by the condition beyond the limitations found in the ALJ's RFC finding. The Seventh Circuit in a nonprecedential

9

decision recently noted the consequence of a plaintiff's failure to articulate functional impact:

> Davis also argues that the ALJ erred by not including any limitations regarding fibromyalgia in the RFC, but Davis waived this challenge by not developing it in her brief. She does not explain how the ALJ's RFC finding is incompatible with her fibromyalgia symptoms, nor does she suggest what limitations should have been included. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (explaining that a diagnosed medical condition does not necessarily establish decreased capacity to work).

*Davis v. Berryhill*, 2018 WL 367808 at *4 (7th Cir. Jan. 11, 2018) (unpublished).

Assuming *arguendo* that waiver does not apply, the court will give Plaintiff the full benefit of the doubt that she has implicitly challenged the ALJ's conclusion that her "contentions as to the magnitude of her symptomatology and dysfunction, including her expressed level of pain and fatigue, and reported need to take breaks or to lie down for extended intervals on most days, is not fully consistent with the evidence of record." [Filing No. 13-2 at 24.] However, the court does not see any error with the ALJ's evaluation of Plaintiff's subjective complaints. As noted above, credibility determinations are afforded considerable deference and disturbed only if patently wrong. *Prochaska*, 454 F.3d at 738. The Seventh Circuit has had limited opportunity to address the standard under the new SSR 16-3p due to its limited retroactivity. However, the Circuit has noted that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously, administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). While the court might not completely

agree with how the ALJ weighed Plaintiff's subjective complaints, the ALJ provided at least some valid reasons for discounting them, including as noted above, an increased capacity for activities of daily living with the use of a stimulant and her treating provider's observation that her appearance and mobility seemed out of proportion to her reported pain level. Accordingly, the court will not disturb the ALJ's conclusion under the deferential standard of review.

### B. Moderate Limitations of Concentration, Persistence, and Pace

Plaintiff notes that despite the ALJ finding moderate deficiencies of concentration, persistence, and pace, the ALJ's RFC finding "only limits the claimant to 'simple, routine, repetitive work involving only occasional interaction with the public.'" [Filing No. 17 at 2-3 (citing Filing No. 13-2 at 22).] Plaintiff argues that the hypothetical posed to the VE (in the identical language of the RFC finding) is inadequate because it does not fully incorporate all of Plaintiff's limitations supported by the record (specifically those limitations that led to the ALJ finding moderate difficulties with concentration, persistence, and pace). [Filing No. 17 at 3.]

The general rule is simple enough. Regardless of the basis, a hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir.2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); *see also* SSR 96–5p, 1996 WL 374183, at *5 (RFC assessment "is based upon

11

consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir.2009)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Id.* at 814 (citing *Yurt,* 758 F.3d at 857).[6]

The court does not find the hypothetical inadequate here. Plaintiff correctly points out that the Seventh Circuit has expressed its concerns with imputing moderate limitations of concentration, persistence, and pace into limitations as to the skill level demands of a job. "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Stewart*, 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, and pace); *see also Craft*, 539 F.3d at 677-78 (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings)). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do

---

[6] There is no evidence in this case that the VE independently reviewed the medical record or was otherwise oriented to the full limitations supported by the record, beyond what was conveyed in hypothetical questioning from the ALJ.

12

tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *see also* Social Security Ruling 85-15 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")). "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59.

However, the analysis is highly fact driven. Here when assessing the "paragraph B" criteria, the ALJ did find that Plaintiff "has moderate deficiencies of concentration, persistence or pace in completing tasks in a timely manner." [Filing No. 13-2 at 22.] The limitations identified in the "paragraph B" criteria are used to rate the severity of mental impairments at Step Two and Step Three of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)-(e). The ALJ's finding appears to be based on an assessment from a state agency reviewing consultant, W. Shipley, Ph.D. [Filing No. 13-2 at 24.], which was given significant weight. Dr. Shipley reviewed the record evidence on July 15, 2014 and concluded that Plaintiff had moderate limitations of concentration, persistence, and pace. [Filing No. 13-3 at 25.] Plaintiff does not challenge the ALJ's paragraph B findings. However, the RFC assessment used at Step Four and Step Five requires a more detailed assessment by itemizing various functions contained in the broad categories found in

paragraph B of the adult mental disorder listings. SSR 96-8p (S.S.A.), 1996 WL 374184, (July 2, 1996). Plaintiff challenges that the ALJ's RFC finding adequately accounts for the more detailed assessment of the various functions contained in the broader paragraph B category.

As noted above, the ALJ relied on Dr. Shipley's assessment. "True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." *Varga,* 794 F.3d at 816 (citing *Johansen v. Barnhart,* 314 F.3d 283, 286 (7th Cir. 2002)). The "ALJ may reasonably rely on the examiner's narrative in Section III, *at least where it is not inconsistent* with the findings in the Section I worksheet." *Capman v. Colvin*, 617 Fed.Appx. 575, 579 (7th Cir. 2015) (emphasis added). Dr. Shipley provided a narrative along with his assessment where he translated his worksheet observations into limitations, "[b]ased on the evidence, the [claimant] appears capable of performing unskilled tasks within physical parameters, especially if she continues to get treatment." [Filing No. 13-3 at 30.] As long as the narrative is not inconsistent with Dr. Shipley's worksheet observations, the ALJ is entitled to rely on the narrative in articulating his RFC finding.

The court finds that to be the case here. Dr. Shipley's worksheet observations found Plaintiff to be "not significantly limited" in each specific functional area assessed, except for five areas where he found her to be "moderately limited," as to (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions, (3) the ability to work in coordination with or in proximity to others without being distracted by them, (4) the ability to interact appropriately with the general public,

and (5) the ability to travel in unfamiliar places or use public transportation. [Filing No. 13-3 at 28-30.] The specific areas that are assessed as limited predominantly deal with Plaintiff's ability to handle working with detailed instructions and interaction. Dr. Shipley did not opine moderate limitations in sustaining concentration and persistence, maintaining attention and concentration for extended periods, performing activities within a schedule, sustaining an ordinary routine, completing a normal workday or workweek without interruption from psychological based symptoms, or performing at a consistent pace. [Filing No. 13-3 at 29-30.] Based on the specific areas of functional concern assessed by Dr. Shipley, the court finds that the ALJ was entitled to rely on his narrative that Plaintiff would be limited in terms of the skill level of the job, so long as the ALJ included further limitations concerning interaction, as the ALJ did here. [Filing No. 13-2 at 22.]

Plaintiff relies on Seventh Circuit precedent already discussed above in *Yurt* and *Varga* in support of her argument. [Filing No. 17 at 3.] However, the court believes both cases to be distinguishable based on the specific functional areas that were assessed as moderately limited by Dr. Shipley. *See Wilson v. Berryhill*, 2018 WL 300184, at *2 (S.D. Ind. Jan. 5, 2018) (distinguishing *Yurt* and *Varga* based on the underlying area(s) of functional limitation). In *Yurt,* the ALJ relied on an assessment finding the claimant moderately limited "in his ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) *perform activities within a schedule and maintain regular attendance*; (4) *perform at a consistent pace and complete a normal workday and workweek*; (5) interact appropriately with the general public; (6) get along with coworkers or peers; and (7) maintain socially appropriate behavior." *Yurt*, 758 F.3d at 854 (emphasis

added). In *Varga*, the ALJ relied on an assessment finding the claimant moderately limited "in (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) *maintaining attention and concentration for extended periods*; (4) *completing a normal workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods*; (5) accepting instructions and responding appropriately to criticism from supervisors; (6) getting along with coworkers without distracting them or exhibiting behavioral extremes; and (7) responding appropriately to changes in the work setting." *Varga*, 794 F.3d at 811 (emphasis added). Based on the foregoing discussion, the court rejects the Plaintiff's argument that the ALJ's hypothetical was inadequate.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id*. at 274. Taken together, the court can find no legal basis presented by Plaintiff to reverse the ALJ's decision that

she was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

**SO ORDERED** this 30th day of August 2018.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.